IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

JEAN PIERRE KORN and SUSAN KORN,

        Plaintiffs,                No. 2:12-cv-00203-KJM-JFM

    vs.

STATE FARM INSURANCE COMPANY, et al.,

        Defendants.            <u>ORDER</u>

_____/

        This case was on the court's May 10, 2013 calendar for the motion for summary judgment brought by defendant State Farm Insurance Company ("State Farm"). It was submitted without hearing under Local Rule 230(g). Plaintiffs Susan and Jean Pierre Korn (collectively, "the Korns") allege that State Farm illegally withheld benefits under the Korns' Personal Liability Umbrella Policy (the "Umbrella Policy") after the Korns were injured in a car accident. State Farm argues on summary judgment that the terms of the Umbrella Policy do not guarantee the benefits the Korns seek. For the reasons explained below, the court GRANTS defendant's motion.

/////

1

I.     BACKGROUND[1]

Susan Korn first spoke to her State Farm agent, Mark Fink, about purchasing the Umbrella Policy in 2006. (Dep. of Susan Korn at 15:3–15, ECF 23-1.) At that time, the Korns already had an automobile insurance policy and a homeowners' insurance policy with State Farm. (*Id.* at 17:11–16.) The automobile policy covered bodily injury of up to $250,000 per person and $500,000 per accident in the event that one or both of the Korns were injured by an uninsured driver. (Auto Policy, Ex. 2, ECF 15-1.)

Sometime in early 2006, Susan called Fink to ask whether the insurance coverage for the Korns' home and Susan's jewelry was adequate. (Dep. of Susan Korn at 16:9–17:10, 19:2–7, ECF 23-1.) During the conversation between Susan and Fink, Fink brought up the Umbrella Policy. (*Id.* at 19:15–17.) Fink "said that [State Farm] had an umbrella policy that would cover everything that [Susan had] in [her] premium[2] policy plus $1 million coverage on everything that [she] already had coverage on, cars and the house." (*Id.* at 19:20–23.) Susan "specifically confirmed that the umbrella policy would provide the heightened level of coverage in every area covered by [her] primary policy." (Pls.' Resp. to Interrogs. at 3, Ex. 5, ECF 16-3.)

The Korns purchased the Umbrella Policy on or about April 24, 2006 and received a "declaration paper" regarding the Umbrella Policy and periodic renewal notices by mail. (Dep. of Susan Korn at 22:4–26, 24:19–25; Statement of Disputed Facts ¶ 1, ECF 22.) The Umbrella Policy provided one million dollars in coverage, which included automobile liability coverage, recreational motor vehicle liability coverage, personal residential liability, and watercraft liability. (Umbrella Policy, Ex. 1 to Decl. of Bill Wyman at 1-2, ECF 14–1.) The Umbrella Policy does not include coverage for personal injury to an insured. (*Id.* at 7, 14.) State Farm stopped offering

---

[1] The facts here are largely undisputed. The court relies on the evidence and undisputed facts submitted by both parties, to which neither party has submitted objections.

[2] The Korns submitted Susan Korn's declaration in which she states she mistakenly referred to her primary insurance policy as her "premium policy" during her deposition. (Decl. of Susan Korn ¶ 4, ECF 24.)

uninsured motorist coverage for its Umbrella Policies as of March 1, 1996. (Decl. of Bill Wyman ¶ 6, ECF 14.)

On January 2, 2009, the Korns were in a car accident when a drunk driver traveling in the opposite direction crossed into the Korns' lane and collided with their car. (Pls. Resp. to Interrogs. at 3, Ex. 5, ECF 16-3.) (*Id.*) The Korns both suffered permanent physical injuries and the other driver, who was uninsured, was killed. (*Id.*) The Korns' combined medical bills from the accident totaled $646,781.53. (*Id.*) The Korns submitted a claim to State Farm and received $500,000, the maximum amount from their automobile policy, but received no benefits from their Umbrella Policy. (Dep. of Susan Korn at 31:20-25.)

The Korns filed their complaint in state court on December 30, 2010 and State Farm removed it to this court on January 25, 2012. (ECF 1.) The complaint alleged claims for (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) unfair business practices, in violation of California Business and Professions Code § 1700; (4) negligent misrepresentation; and (5) negligence. (*Id.*) State Farm moves for summary judgment on all claims.

II.   STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish

---

[3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

3

that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.  ANALYSIS

  A.  Breach of Contract

Under California law, insurance policies are governed under conventional rules of contract interpretation. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (Cal. 1995). "The essential elements of a claim of breach of contract, whether express or implied, are the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff." *San Mateo Union High Sch. Dist. v. County of San Mateo*, 213 Cal. App. 4th 418, 439 (Ct. App. 2013). To prevail on a claim for breach of contract, plaintiffs must show they were deprived of a contractual benefit from the insurance policy. *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th 1489, 1496 (Cal. App. 1997).

Defendant argues that the Korns cannot succeed on their claim for breach of contract because the Umbrella Policy did not provide for uninsured motorist coverage, meaning

that defendant did not withhold any benefit from the policy. (ECF 12 at 15.) The Korns concede that the written Umbrella Policy did not include a provision for uninsured motorist coverage, but assert that State Farm "represented the insurance product to be something it was not, namely, that it increased their uninsured motorist coverage by an additional one million dollars." (ECF 21 at 5-6.)

The court must determine whether it can consider evidence the Korns allege shows the actual terms of the insurance policy differed from its written terms. "Parol evidence is admissible to interpret an insurance policy if 'relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 961 (Ct. App. 2010) (quoting *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 435 (Cal. 1984)). To admit extrinsic evidence, the court first must determine that the language of the contract is ambiguous. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (Ct. App. 1992). Here, plaintiffs agree the Umbrella Policy clearly contains no provision for uninsured motorist coverage. Thus, the court cannot consider evidence of the Korns' belief the Umbrella Policy stated otherwise. *See Hervey*, 185 Cal. App. 4th at 965 ("[T]o the extent [the insured's] understanding of the policy is contrary to its explicit language, her subjective intent is not relevant."). Because the Korns have presented no evidence that defendants acted contrary to the express terms of the Umbrella Policy, defendants' motion for summary judgment as to the breach of contract claim is granted.

B. Breach of the Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc*., 2 Cal. 4th 342, 371 (Cal. 1992). The goals and written terms of a contract determine the conduct that would be considered a breach of the duty of good faith and fair dealing. *Id*. at 373. "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (Cal. Ct. App. 2008)) (emphasis in original). In addition, there must


be a "special relationship" with "fiduciary characteristics" between the contracting parties. *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).

Defendant argues correctly that it cannot be liable for breach of the covenant of good faith and fair dealing because the Umbrella Policy did not promise uninsured driver coverage. (ECF 12 at 20.) In *Waller v. Truck Insurance Exchange*, *Inc.*, the plaintiff policyholders could not succeed on their claim for breach of the implied covenant of good faith and fair dealing for an insurance company's refusal to defend a lawsuit against the policyholders because there was no provision requiring the insurance company to defend the suit, meaning they were not deprived of any of their contractual rights. 11 Cal. 4th 1, 36 (Cal. 1995). Here, the Korns have already conceded that the Umbrella Policy did not provide uninsured driver coverage. Because defendant has not denied the Korns any of their rights under the Umbrella Policy, defendant's motion on this claim is granted.

C.  Negligence

The elements of a cause of action for negligence are: (1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff. *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (Ct. App. 1987). "Whether a duty of care exists is a question of law for the court." *Id*. In general, an insurance agent does not owe a duty of care towards an insured to make sure that the insured has an appropriate type or amount of insurance coverage. *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (Ct. App. 1997); *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1096 (Ct. App. 1996); *Jones*, 189 Cal. App. 3d at 954. Rather, it is the insured's responsibility to inform the agent of his or her needs when seeking a policy. *Paper Savers*, 51 Cal. App. 4th at 1096.

There are specific situations, however, in which an insurance agent does owe a duty of care to an insured. *Id.* at 1096-97. An insurance agent may assume a duty towards an insured if he or she responds to the insured's demand for specific coverage. *Id.* at 1096. For example, in *Free v. Republic Insurance Co.*, an insurer told a homeowner in response to the homeowner's periodic requests that the homeowner's insurance coverage would be sufficient to

6

rebuild his home. 8 Cal. App. 4th 1726, 1729 (Ct. App. 1992). But when a fire destroyed the home ten years after the homeowner purchased the policy, the policy limit was not high enough to replace the house, which had increased in value. Because the insurance company had responded to plaintiff's specific requests about his coverage, it owed a duty to that plaintiff. *Id.* In contrast, the court in *Fitzpatrick, supra*, concluded that even though the plaintiffs in that case presented evidence that they would have purchased an auto insurance policy with higher uninsured/underinsured driver coverage if their agent had informed them of this option, the fact that the plaintiffs never specifically requested such coverage meant the agent owed the plaintiffs no duty of care. 57 Cal. App. 4th at 928.

Similarly, an insurance agent owes a duty to the insured if he misrepresents the nature or extent of an insurance policy's coverage. *Paper Savers*, 51 Cal. App. 4th at 1097. In *Paper Savers,* a factory owner alleged that he purchased a supplemental policy based on the recommendation of his insurance agent, who advised the factory owner it would cover replacement of his factory equipment in the case of a total loss, regardless of the original policy limit. *Id.* at 1093. A fire destroyed the factory, and as the insurance agent's description of the supplemental policy was incorrect, the factory owner did not receive enough money from the insurance company to replace the equipment. *Id.* The court determined that the insurance agent's alleged misleading statements were enough to preclude summary judgment on the factory owner's negligence claim, reasoning that the insurance agent owed a duty to the factory owner if he had made misrepresentations about the extent of coverage. *Id.* at 1101. In a contrasting case, a business owner asked his insurance agent if the agent could "imagine any claim . . . that would not be covered" by the policy the business owner planned to purchase for some apartment buildings he owned and the agent replied that he could not. *Wallman v. Suddock*, 200 Cal. App. 4th 1288, 1313 (Ct. App. 2011). Subsequently, the business owner was sued after an accident took place at an apartment building that he no longer owned and the policy he had purchased did not cover the claim. *Id.* at 1295. The business owner's generalized inquiry about the policy coverage and the agent's response were not specific enough to impose a duty on the agent. *Id.* at 1315.

7


1  Here, defendant asserts it cannot be liable for negligence because there are no
2 exceptions to the general rule that an insurance agent does not owe a duty to an insured. (ECF 12
3 at 6.) The Korns do not dispute that insurance agents ordinarily have no duty of care, but argue
4 that their situation warrants an exception. (ECF 21 at 12.)
5  The Korns first claim that State Farm owed them a duty of care because they
6 explicitly requested a specific type of coverage. The Korns assert they told Fink "they desired to
7 have exactly the same type of coverage in the umbrella policy as they did in their primary policy
8 in order to provide them with the substantial additional protection that an umbrella policy would
9 provide." (ECF 21 at 13.) However, the evidence shows that Susan contacted Fink to discuss
10 obtaining supplemental coverage for their home and jewelry. (Dep. of Susan Korn at 16:9–17:10,
11 19:2–7, ECF 23-1.) The Korns have produced no evidence showing that Fink could have known
12 they wanted greater uninsured driver coverage.
13  Next, the Korns argue that Fink owed them a duty of care because he
14 misrepresented the type of coverage they would receive under the Umbrella Policy by stating that
15 the Umbrella Policy contained the same type of coverage as their existing policies, only with
16 higher limits. (ECF 21 at 14.) Although the Korns have presented evidence that Fink made this
17 statement, the statement construed in the light most favorable to the Korns is not specific enough
18 to constitute a misrepresentation. Unlike in *Paper Savers*, where the insurance agent told the
19 factory owner that his equipment would be replaced in the event of a total loss, the Korns produce
20 no evidence showing that Fink ever promised the Korns that the Umbrella Policy would provide
21 protection in the event of bodily injury. Fink's alleged representations that the Umbrella Policy
22 had the same type of protection as the Korns' prior policies are too vague to give rise to a duty of
23 care. Because there is no issue of fact that defendant owed the Korns a duty of care, defendant's
24 motion for summary judgment on the Korns' negligence claim is granted.
25  D.  Negligent Misrepresentation
26  The elements for a claim of negligent misrepresentation are (1) a misrepresentation
27 of a past or existing material fact, (2) without reasonable grounds for believing it to be true,
28

(3) with intent to induce another's reliance, and (4) justifiable reliance by a party who was ignorant of the truth. *B.L.M. v. Sabo & Deitsch,* 55 Cal. App. 4th 823, 834 (Ct. App. 1997).

Defendant argues that it never made any misrepresentation of fact because none of its agents told the Korns that the Umbrella Policy included coverage for uninsured motorists. (ECF 12 at 14.) The Korns contend that Fink made a misrepresentation by telling them that the Umbrella Coverage had the same type of coverage as their existing policies. (ECF 21 at 13-14.) As discussed above, plaintiff has not provided any evidence showing that defendant made any misrepresentation about the coverage provided and the evidence before the court indicates the Korns and Fink never discussed uninsured motorist coverage specifically. Accordingly, defendant's motion for summary judgment as to this claim is granted.

E. Unfair Competition Law

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. An act violates the Unfair Competition Law if it is either "unlawful," "unfair" or "fraudulent." *Rubio v. Capitol One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010). To meet the "unlawful" prong of the UCL, the UCL statute "borrows" violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (Cal. 2003). The Korns' complaint alleges they were damaged by defendants' unlawful misrepresentation about the benefits they would receive from the Umbrella Policy. (ECF 1.) However, the record before the court supports the conclusion that defendant did not make any unlawful misrepresentations to the Korns about the Umbrella Policy. Because there is no evidence that defendant engaged in unlawful practices, defendant's motion for summary judgment as to the UCL claim also is granted.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.

DATED: August 16, 2013.

UNITED STATES DISTRICT JUDGE